## Doris B. Garrity *v.* Douglas G. McCaskey
## (14493)

Peters, C. J., Callahan, Covello, Borden and Berdon, Js.

Argued June 9—decision released July 21, 1992

*Alexander J. Trembicki,* for the appellant (defendant).

*A. Reynolds Gordon,* for the appellee (plaintiff).

1

PETERS, C. J. The principal issue in this appeal is whether a court should vacate an award resulting from consensual arbitration because of the arbitrators' alleged manifest disregard of the applicable law. The arbitration arose out of a written agreement of the parties subsequent to an action commenced by the plaintiff, Doris B. Garrity, in which she claimed that the defendant, Douglas G. McCaskey, had violated state and federal securities laws in his management of her stock portfolio. Following the arbitrators' decision and award of damages in favor of the plaintiff, the plaintiff filed an application with the Superior Court pursuant to General Statutes § 52-417[1] to confirm the award and the defendant filed a separate application pursuant to General Statutes § 52-418[2] to vacate the award. The trial court granted the plaintiff's application for confirmation. Thereafter, the defendant appealed to the Appellate Court from the judgment confirming the award.[3] We transferred the appeal to this

---

[1] General Statutes § 52-417 provides in relevant part: "APPLICATION FOR ORDER CONFIRMING AWARD. At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[2] General Statutes § 52-418 provides in relevant part: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] The defendant claims in his statement of the issues on appeal that the award should be vacated pursuant to General Statutes § 52-418 (a) (3) and (4). He has provided, however, neither argument nor facts to support a

court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), and now affirm.

The arbitrators found the following facts. In 1984, the plaintiff commenced a business relationship with the defendant, in which the defendant undertook to manage the plaintiff's stock portfolio. From the outset, the defendant ignored the plaintiff's instructions that prohibited particular transactions, and engaged in margin, option, and other highly speculative trading. Due to continued losses in these unauthorized trades, the defendant also sold portions of the plaintiff's original portfolio to cover the account debt. These transactions significantly decreased the size and value of the total portfolio. Although the defendant claimed that the applicable statutes of limitations had expired since the beginning of his alleged misconduct, the arbitrators found that "the existence of [a] fiduciary relationship [between the plaintiff and the defendant] tolled the Statute of Limitations so that [the plaintiff's] claim is timely."[4] The arbitrators rendered their decision in favor of the plaintiff and awarded damages in the amount of $330,306, which included restoration of the original portfolio's value as of March 7, 1991, the date of the hearing.

The defendant makes two principal claims in support of his contention that the trial court should have vacated the arbitration award. He maintains that the arbitration award was in manifest disregard of the law because it failed to recognize that applicable state and federal statutes of limitations on their face barred the plaintiff's claim and that these statutes had not been tolled. He maintains, further, that the arbitration award

§ 52-418 (a) (3) claim that the arbitrators refused to postpone the hearing or refused to hear evidence. We therefore consider this claim abandoned and consider only his claim related to § 52-418 (a) (4).

[4] The plaintiff ended her client-broker relationship with the defendant, and subsequently filed her complaint in the Superior Court, in 1988.

exceeded the scope of the arbitration submission, and was in manifest disregard of the law, when the panel awarded damages to the plaintiff that restored the value of her portfolio as of 1991, the time of the hearing. We are unpersuaded.

I

We address first the defendant's claim that the arbitrators should have barred the plaintiff's securities claims because of applicable state and federal statutes of limitations that were not tolled in the circumstances of this case. This claim raises two subissues: (1) as a general proposition, does a "manifest disregard of the law" require a trial court to vacate an arbitration award; and (2) if so, should the arbitration award in the present case be vacated on this ground?

A

Our inquiry into "manifest disregard of the law" as a ground for vacating an arbitration award is guided by well established principles of the law of consensual arbitration. When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 185, 530 A.2d 171 (1987). When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration,* 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute reso-

lution. *Middletown* v. *Police Local, No. 1361,* 187 Conn. 228, 230, 445 A.2d 322 (1982); *State* v. *Connecticut Employees Union Independent,* 184 Conn. 578, 579, 440 A.2d 229 (1981).

We conclude, as did the trial court, that the award in this case arose out of an unrestricted submission. The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Bic Pen Corporation* v. *Local No. 134,* 183 Conn. 579, 584–85, 440 A.2d 774 (1981); *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 106–107, 438 A.2d 1171 (1981). In the present case, the agreement provided that the "[a]rbitration shall consider and determine any and all of [the plaintiff's] claims against [the defendant]," and that "[the defendant] reserves all rights and defenses."[5] At oral argument in this court, the parties acknowledged that this agreement was intended to authorize the arbitrators to determine fully both the plaintiff's claims and the defendant's rights and defenses. In light of the acknowledgment

---

[5] The arbitration agreement provided in relevant part: "<u>Scope of Arbitration:</u> Arbitration shall consider and determine any and all of [the plaintiff's] claims against [the defendant] including claims for punitive damages, attorney's fees, all Connecticut and federal claims, and any and all claims existing in the present pending lawsuit including any and all claims against [the defendant] concerning activities during the Drexel period. Claims during the Drexel period are not limited to the Court pleadings.

"In signing this agreement, [the defendant] reserves all rights and defenses, including a defense of lack of authority or jurisdiction of the arbitrators to award punitive damages, statute of limitations and all other defenses.

"Simultaneously with this agreement, the parties shall execute a demand for arbitration and the same shall be forwarded to the Connecticut AAA [American Arbitration Association] office."

that the arbitrators had unqualified authority to resolve their dispute, we conclude that their submission was unrestricted.

Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985); (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. *Carroll* v. *Aetna Casualty & Surety Co.,* supra, 22–23. The defendant impliedly urges us to consider as a separate fourth ground for judicial intervention an alleged manifest disregard of the law. We decline to do so.

We have historically construed narrowly the two common law grounds for vacating an arbitration award. We denominate the constitutionality and public policy exceptions as common law grounds although we have, on occasion, implied that the basis for these grounds is to be found within the statutory scheme of § 52-418 (a) (4). See, e.g., *Hartford* v. *Board of Mediation & Arbitration,* supra, 14; *Watertown Police Union Local 541* v. *Watertown,* supra, 339. It is more appropriate to recognize that the power to determine the constitutionality of a statute and the power to strike an arbitration ruling as violative of public policy exist apart from any particular grant of authority from the legislative branch. Because of the multiple sources authorizing judicial review of arbitration awards, we therefore deem inaccurate the implication in these earlier cases that § 52-418 (a) (4) is the *sole* source of the court's power of review.

Our consideration of the applicability of the common law exceptions in the present circumstances persuades us that they are not applicable in this case, either directly or by way of analogy. The exception for issues of constitutionality is limited to setting aside an arbitrator's award that explicitly rules on the constitutionality of a statute. *Caldor, Inc.* v. *Thornton,* supra, 344. The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. *Watertown Police Union Local 541* v. *Watertown,* supra, 339. These narrow exceptions to the general discretion of the arbitrator to decide all questions of fact and law within the scope of the submission do not encompass an alleged manifest disregard of the law. In light of the strong public policy that favors arbitration and in deference to the existing statutory scheme through which the legislature has chosen to define this field, we decline the defendant's invitation to create a new exception independent of § 52-418.

The defendant's invocation of a doctrine of manifest disregard of the law may, however, be encompassed by the existing statutory scheme for judicial review of arbitration in § 52-418. Section 52-418 (a) (4) provides that an award shall be vacated if "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 415; *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 153, 523 A.2d 1271 (1987); *Bic Pen Corporation* v. *Local No. 134,* supra, 584. We have also recognized, however, that an arbitrator's egregious misperformance of duty may warrant rejection of the

resulting award. In *Darien Education Assn.* v. *Board of Education,* 172 Conn. 434, 437–38, 374 A.2d 1081 (1977), we noted that "[i]f the memorandum of an arbitrator revealed that he had reached his decision by consulting a ouija board, surely it should not suffice that the award conformed to the submission." We have also acknowledged that a court should vacate an award if "the memorandum patently discloses an infidelity to the obligation imposed upon the arbitrators." *New Britain* v. *State Board of Mediation & Arbitration,* 178 Conn. 557, 562, 424 A.2d 263 (1979).[6]

Our recognition that there may be occasion to vacate an award because of egregious misbehavior is consistent with the developing jurisprudence in other jurisdictions. The principle that an award may be vacated because of a "manifest disregard of the law" was first articulated by the United States Supreme Court, in dictum, in *Wilko* v. *Swan,* 346 U.S. 427, 436–37, 74 S. Ct. 182, 98 L. Ed. 168 (1953): "In unrestricted submissions . . . the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation."[7] (Emphasis added.) Although the federal courts have interpreted their arbitration statute to permit this judicially created ground for vacating the award, they have carefully delineated the extraordinarily narrow scope of such a review. The test was applied to reject an aggrieved party's invitation to review and vacate an arbitration award in *Merrill Lynch, Pierce, Fenner*

---

[6] We emphasize that we do not hold that this review centers on an arbitrator's memorandum of decision, or that all arbitration decisions require such a memorandum. We do note that, if the clarity of the error is so apparent as to show, for instance, on the face of the award or in the arbitrator's memorandum of decision, our courts may review this evidence to determine whether to vacate the award pursuant to General Statutes § 52-418 (a) (4).

[7] The federal statute that provides for vacating an arbitration award, 9 U.S.C. § 10 (d), is virtually identical to General Statutes § 52-418 (a) (4).

*& Smith, Inc.* v. *Bobker,* 808 F.2d 930 (2d Cir. 1986), where the court held that "manifest disregard of the law" "clearly means more than error or misunderstanding with respect to the law. . . . The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. . . . Judicial inquiry under the 'manifest disregard' standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it." Id., 933–34.

Other states have also recognized that an arbitrator's egregious misperformance of duty or patently irrational application of legal principles warrants review and rejection of the resulting award. The New York Court of Appeals has held that "[t]he arbitrator's determination may even entail a misapplication of substantive rules of law and still be not subject to being vacated unless the court concludes that it is totally irrational . . . ." *Maross Construction, Inc.* v. *Central New York Regional Transportation Authority,* 66 N.Y.2d 341, 346, 488 N.E.2d 67, 497 N.Y.S.2d 321 (1985). The Supreme Judicial Court of Massachusetts similarly has concluded that, "even if [the arbitrator] may have been in error in [its] interpretation of [the contract] . . . we do not see the arbitrator's action as so irrational as to permit our intervention to vacate the award." *Concerned Minority Educators of Worcester* v. *School Committee of Worcester,* 392 Mass. 184, 188, 466 N.E.2d 114 (1984); see also, e.g., *Muzzy* v. *Chevrolet Division, General Motors Corporation,* 153 Vt. 179,

185, 571 A.2d 609 (1989) (referring to "manifest disregard of the law" and holding that "[o]nly under extreme circumstances can we intervene to correct an error of law"); *Mayor and City Council of Baltimore* v. *Allied Contractors, Inc.*, 236 Md. 534, 546, 204 A.2d 546 (1964) ("[a] mistake which will vitiate or invalidate an award must be gross and manifest to the point of showing bad faith or failure to exercise honest judgment"); 16 S. Williston, Contracts (3d Ed. Jaeger 1976) § 1923B, p. 694 n.13 (citing the "manifest disregard of the law" standard of review for vacating an arbitration award).

We conclude, therefore, that an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has "exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." We emphasize, however, that the "manifest disregard of the law" ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. See 16 S. Williston, supra, § 1923C, pp. 743, 745 (noting that "[a]mong the disadvantages or drawbacks which are generally recognized" in arbitration is the "[p]ossibility of an arbitrary, irresponsible or capricious award"); see also comment, "Arbitration in Connecticut: Issues in Judicial Intervention Under the Connecticut Arbitration Statutes," 17 Conn. L. Rev.

387, 412 (1985). Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. See *Warner* v. *Konover,* 210 Conn. 150, 154–55, 553 A.2d 1138 (1989); 2 Restatement (Second), Contracts (1981) § 205.

## B

The defendant contends that the arbitrators' allegedly erroneous consideration of relevant statutes of limitations so manifestly disregarded the law as to warrant vacating the award. In order to prevail, the defendant must demonstrate that the award reflects an egregious or patently irrational rejection of clearly controlling legal principles. He has failed to do so.

According to the defendant, the arbitrators ignored or at least misapplied federal or state statutes of limitations that should have barred the plaintiff's securities claims. The arbitrators' decision, however, clearly indicates that they considered the statutes of limitations issue. The memorandum of decision explicitly concluded that the plaintiff's claim was timely because any statutes of limitations had been tolled. Nonetheless, the defendant asserts that, even if the arbitrators considered the limitations periods, they misapplied equitable tolling doctrines.

Because we do not review an arbitrator's decision merely for errors of law, in the present case we do not decide the merits of the defendant's argument regarding the proper application of the statutes of limitations to the plaintiff's securities claims. Even if the arbitrators were to have misapplied the law governing statutes of limitations, such a misconstruction of the law would not demonstrate the arbitrators' egregious or

patently irrational rejection of clearly controlling legal principles. The defendant's claim in this case falls far short of an appropriate invocation of § 52-418 (a) (4) for a manifest disregard of the law.

## II

The defendant also maintains that the trial court should have vacated the award because of an alleged misapplication of the law of remedies. The defendant claims that the arbitrators, in awarding the plaintiff damages through 1991, when the arbitration hearing was held, instead of terminating her damages as of 1988, when the client-broker relationship ended: first, exceeded the scope of its authority; and, second, manifestly disregarded the law. In light of the earlier discussion in this opinion, the defendant's claim is unpersuasive.

We have already noted that the arbitration submission in this case was an unrestricted submission. An award conforming to an unrestricted submission should generally be confirmed by the court. *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 415–16; *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 153–54; *Bic Pen Corporation* v. *Local No. 134,* supra, 584–85.

The defendant urges us nonetheless to consider his contention that the submission was limited to the pleadings in the lawsuit antecedent to the arbitration, and that, therefore, the damage award should have been limited to the period ending November, 1988. This contention is refuted by the terms of the submission, which state explicitly that the "[a]rbitration shall consider and determine *any and all* of [the plaintiff's] claims against [the defendant] *including* . . . all Connecticut and federal claims, and any and all claims existing in the present pending lawsuit . . . ." (Emphasis added.) This language is broad enough to support the arbitra-

tors' determination that the claims included damages through the period ending March, 1991. Even if the submission were read to limit the plaintiff's claims to those listed in the complaint, the amended complaint claimed for relief "money damages measured in such a way as to restore the plaintiff's portfolio to her, with appropriate adjustments." The award restoring the value of the plaintiff's original portfolio through March, 1991, was within the scope of the submission.

The defendant alternatively asserts that the award was the product of a manifest disregard of the law because the arbitrators misapplied the law of damages. In particular, he asserts that damages awarded on a theory of rescission, properly applied, would not have permitted an award extending past November, 1988. As with his claim of manifest disregard of the law of statutes of limitations, we will not decide the merits of this claim because the defendant has not demonstrated anything more than his disagreement with the arbitrators' interpretation and application of established legal principles. Such a contention is a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418 (a) (4). Acceptance of his argument would turn every disagreement with arbitrators' rulings of law into an allegation of manifest disregard of the law. We have never construed § 52-418 (a) (4) so broadly and we decline to do so today.

The judgment is affirmed.

In this opinion the other justices concurred.