[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action results from the plaintiff oil company's discharge of approximately 800 gallons of number two heating oil into the basement of the defendant's residential dwelling in Higganum. The building is of federal colonial style and was built around 1850. The incident is more serious than might have been so because, while the foundations is of stone, the basement has only a dirt floor.
The defendant brought an action sounding in negligence and breach of contract. His complaint sought damages for containment and remediation costs pursuant to Section 22a-452
of the Connecticut General Statute. At a later date the parties executed a written agreement to arbitrate their dispute. As a part of their agreement they stipulated that "Peterson Oil delivered oil on January 22, 1990 which caused a discharge of oil at the Premises" and that "Peterson Oil is responsible for said discharge. . . ." The specific issues which the parties submitted to the arbitrators for final and binding arbitration are the following:
 A. The type of environmental remediation required to return the 346 Saybrook Road Premises to the condition in which it existed prior to the January 22, 1990 discharge of oil; and
 B. The measure of compensation and/or reimbursement for property damage and losses suffered as a result of the January 22, 1990 incident. CT Page 5992
 Agreement to Arbitrate, para. 1, p. 2
In the Agreement the parties also agreed that "[t]he arbitrators are expressly authorized to resolve any dispute procedure or substance which the arbitrators deem reasonably necessary to achieve such a result." Para. 9, p. 4. And they agreed further that the Agreement was to be "governed and construed in all respects in accordance with the laws of the State of Connecticut." Para. 15, p. 5.
The dispute was presented to a panel of three arbitrators in accordance with the parties' submission. At the close of an evidentiary hearing it was requested that the panel make express findings as to two legal issues which are at the heart of the plaintiff's defense. Those issues were as follows: (1) whether the defendant Chadwick's recovery is limited as a matter of law to the market value of the realty immediately prior to the oil discharge; and (2) whether the defendant's recovery for time spent and interference with life's activities resulting from the discharge is beyond the scope of the arbitrable issues and therefore not compensable.
It is not disputed that the value of the subject real estate prior to the oil discharge was approximately $190,000.00. On February 19, 1994, the panel unanimously awarded the defendant Chadwick $496,183, which amount was predicated on the panel's finding of environmental damages to the premises. Additionally, the panel awarded the defendant $30,000 compensatory damages for his lost time and interference with life's activities.
In response to the parties' above described request the panel's decision contained the following express findings:
 "At the parties' request, the panel states that they found that there is no cap under Connecticut law for property damages and losses of the types involved here. Also, at the parties' request, the panel states that they found the issue of Chadwick's loss of time and interference with life's activities is within the scope of the issues to be arbitrated." Decision of The Panel, p. 2. CT Page 5993
On March 30, 1994, the plaintiff Peterson served the defendant Chadwick with the plaintiff's "application to vacate arbitration award." In support of its application the plaintiff relies on Section 52-418 (a) of the General Statutes which requires the court to vacate an award if it finds that any of several defects is present. One of the defined defects occurs when "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Id., (4).
In the application the plaintiff alleges that the arbitrators exceeded their powers in that their award of damages manifestly disregarded the applicable Connecticut law of damages to property. It is also claimed that the submission, having been limited to compensation and/or reimbursement for property damage and losses suffered to the realty, the arbitrators exceeded their authority by making an award" for speculative future expenditures beyond those suffered by the defendant;" and for damages other than those suffered with regard to the property.
The parties through their attorneys were heard in oral argument on May 23, 1994, regarding those issues raised by the application.
In order to set aside an award based on a manifest disregard of the law the award must manifest "an egregious or patently irrational application of the law," such that the arbitrators have "exceeded [their] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Garrity v. McCaskey, 223 Conn. 1, 10
(1992). Such ground for vacatur "is narrow and should be reserved for circumstances of [the arbitrators'] extraordinary lack of fidelity to established legal principles." Id.
It is generally true that the measure of damages for injury to real property is the diminution in value, which may be determined by the cost of repairs. This is so, provided, of course, that the cost does not exceed the former value of the property or enhance its value above that before it was damaged.Blakeman v. Tobin, 177 Conn. 597, 598 (1979). The rule, however, is inapposite in the instant context where the innocent property owner is jointly and severally liable with the polluter for removal of the contaminant and the costs of containment and cleanup. Starr v. Commissioner of Environment of Protections,226 Conn. 358, 366-70 (1993). While primary liability is imposed CT Page 5994 on the negligent wrong-doer, it is notably significant that no statutory cap as to the amount of reasonable costs or extent of the property owner's right of recovery is expressed. Section22a-452, Connecticut General Statute. The reason for this is clear: "When property has been damaged by oil or hazardous waste and the cost of restoration exceeds the value of the property, diminution in market value is not always a satisfactory measure of tort damages." Mailman's Steam Cleaning Carpet Corp.v. Lizotte, 616 N.E.2d 85, 88 (Mass. 1993).
The submission of the parties required the arbitrators to determine the type of environmental remediation needed to restore the property to its pre-accident state. The panel was also required to determine the measure of compensation and/or reimbursement amount for the property damage and consequential losses. The costs of any environmental remediation was clearly a relevant and material issue to be addressed. That issue was presented to the arbitrators and argued by the parties.
The thrust of the plaintiff's argument is that the award of damages should not exceed the fair market value of the property. The arbitrators, who, as hereinbefore stated, were "expressly authorized to resolve any dispute relating to procedure or substance" which was "reasonably necessary to achieve" the result; Agreement to Arbitrate, para. 9, p. 4; rejected the argument.
"[A] party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. "American UniversalIns. Co. v. Del Greco 205 Conn. 178, 187 (1987). "At the parties' request the panel . . . found that there is no cap under Connecticut law for property damages and losses of the types involved here." Decision of The Panel, p. 2. It is the court's finding that the parties submission authorized the arbitrators to decide the property damage cap issue, and that they decided such issue within the scope of the submission.
With respect to the $30,000 award for loss of time and life's activities, it is the court's finding, contrary to the plaintiff's position, that a reasonable interpretation of the submission would allow for recovery of property damages as well as any resulting "losses suffered," whether or not those losses relate directly to the property itself. "Where there are two reasonably possible interpretations of an arbitrator's award, one CT Page 5995 upholding and the other invalidating the award, the presumption of the validity of an award requires this court to adopt the one that supports its validity." East Haven v. AFSCME, Council 15,Local 1662, 212 Conn. 368, 374 (1989). In short, the panel's award of the above described damages falls within the scope of the parties' submission.
The court also rejects the plaintiff's argument that the portion of property damages award for long-term monitoring of ground-water is predicated on speculative future expenditures and beyond the scope of the submission. The magnitude of the contamination and serious health consequences emanating from polluted drinking water negate any speculative concern and render long-term monitoring a virtual necessity. It is the court's finding that this aspect of the panel's award falls within the scope of the submission.
"Arbitration awards are generally upheld and . . . deference [should be given] to an arbitrator's decision since it is favored as a means of settling disputes." Bridgeport v. ConnecticutPolice Department Employees Local 1159, 32 Conn. App. 289, 292
(1993). "Every reasonable presumption will be made in order to sustain an award." Id., 293; and the burden of demonstrating its non-conformance with the parties' submission rests with the party challenging the decision. Board of Education v. WaterburyTeachers Assn., 216 Conn. 612, 618 (1990).
In summary, the court finds that the plaintiff has failed to prove that the arbitrators' award does not conform to the parties submission; and the court finds further that in rendering such award the arbitrators did not exceed or imperfectly execute their powers. Accordingly, the plaintiff's application to vacate arbitration award is denied. CT Page 5996