[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD
Pursuant to a December 22, 1997, application, New Hampshire Insurance Company (New Hampshire) moves to vacate an arbitration award involving matters in dispute between it and Travelers Indemnity Company of Illinois (Travelers).
The facts pertinent to the dispute are set out in Travelers' January 21, 1998, Objection to Application to Vacate Arbitration Award and Counter Motion to Confirm Award and for Sanctions, and New Hampshire's February 5, 1998 Memorandum in Support of New Hampshire Insurance Company's Application to Vacate Arbitration Award.
To significantly summarize and simplify, the dispute arises out of an incident that occurred in December, 1995, when a cooling tower located on the roof of the Stamford Marriott froze, resulting in loss to the insured under policies issued by both New Hampshire and Travelers. The damage was agreed upon in the amount of $167,796.40. Travelers and New Hampshire each agreed to pay their mutual insured one half of the claim with the express agreement that they would arbitrate the issue of which of the two insurers was responsible to pay the full claim.
Pursuant to a Memorandum of Decision dated November 18, 1997, a majority of the panel of arbitrators issued a ruling in favor of Travelers and ordered New Hampshire to pay $81,348.20, concluding that the subject damage was caused indirectly, in part, by freezing and that there was no evidence that the subject loss resulted from artificially generated electrical current. Construing the relevant policy provisions, the panel determined that the loss was excluded from coverage under the Travelers policy and was covered by the New Hampshire policy.
The principal argument[1] advanced by New Hampshire is that the arbitration award is defective pursuant to General Statutes Section 52-418[2] because the panel failed to compel Travelers to produce a report prepared by an engineer, Arthur E. LaMothe, who had been commissioned to evaluate the cooling tower incident. Mr. LaMothe was deceased at the time of the arbitration hearing. New Hampshire had sought to have the report produced at the arbitration, but Travelers raised various objections, including attorney-client privilege, work product, and a claim that the report, which Travelers describes as a "preliminary report", need not be produced pursuant to Practice Book Section 220(b).[3]
The arbitration was continued, in part, to permit the parties CT Page 2201 to file legal memoranda concerning whether the LaMothe report should be produced. The memoranda were filed. By a letter dated August 27, 1997, the chairman of the three-member panel, Attorney John Stephen Papa, informed the parties that the arbitrators had met and that:
 [a]fter reviewing the transcript of the first session of this arbitration of June 9, 1997, the briefs of both parties submitted on that [the LaMothe report] issue, applicable case law and the provisions of Connecticut practice, we have unanimously decided not to order the production of the LaMothe report at this time.
The report was not produced and its content are not part of the record.[4] Oral argument was held on February 9 and February 17, 1998, in connection with the application.
Legal Analysis
Arbitration is an informal proceeding designed to spare the parties the costs and complexities of litigation. Saturn Const.Co., Inc. v. Premier Roofing Co., Inc., 238 Conn. 293, 298
(1996). The party challenging an arbitration award bears the burden of producing evidence sufficient to invalidate or avoid it. O G/O'Connell Joint Venture v. Chase Fam. Ltd. Partnership,203 Conn. 133, 146 (1987). "[A] party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." Id., at 149. (Emphasis added.)
In this case, according to Travelers' January 21, 1998, memorandum in support of objection, see page 3, Travelers initially filed an application for order to arbitrate. Subsequently, however, according to Travelers' memorandum at page 3, New Hampshire agreed that it would arbitrate the coverage issue, and the parties entered into a stipulated order to proceed to arbitration dated November 1, 1996. See Exhibit V to Appendix 1. The submission was unrestricted, see Garrity v. McCaskey,223 Conn. 1, 4-5 (1992), and New Hampshire and Travelers both agreed that the decision of the arbitrators would be binding. Notwithstanding any prior disputes, the arbitration which occurred, as New Hampshire acknowledges, was therefore consensual CT Page 2202 and unrestricted.
Consequently, the court's review is extremely limited in scope. As our Supreme Court has stated, "When the scope of the submission is unrestricted, the resulting award is not subject to do novo review even for errors of law so long as the award conforms to the submission." Garrity, 223 Conn. at 4. Arbitrators are afforded substantial discretion in determining what evidence to consider and are not obligated to follow strict rules of evidence in reaching their decisions. Saturn ConstructionCompany, 238 Conn. at 298. An arbitrator's "egregious misperformance of duty or patently irrational application of legal principles" can warrant rejection of an award. Garrity,223 Conn. at 9. So may a mistake that is gross and manifest to the point of showing bad faith or failure to exercise honest judgment. Id. at 10. But unless there has been "an egregious evidentiary error," O G/O'Connell Joint Venture,203 Conn. at 147, of an arbitrary nature there can be no finding of misconduct. Declining to compel the production of the LaMothe report, under the circumstances present here, is not in the court's view an arbitrary, egregious evidentiary error equivalent to "misconduct".
Review of the record in this case discloses that the panel, whose chairman was an attorney, heard legal arguments, continued the matter to permit legal briefs to be filed, considered the matter, and then decided not to compel production of the LaMothe report. See, e.g., Appendix 11A, transcript of proceedings of June 9, 1997, at pages 123 et seq. See also Travelers' June 19, 1997, Memorandum of Law Regarding the Preliminary Report of its Non-Testifying Expert. Moreover, because the report is not in evidence, New Hampshire's argument that its nonproduction somehow prejudiced it is based on speculation. Such speculation is not a sufficient substitute for proof that nonproduction of the report deprived New Hampshire of a "full and fair hearing". New Hampshire has cited no case which requires an arbitration panel to compel the production of documents which one side would like to be produced. Even assuming, purely for the sake of argument, that the panel erred in its analysis of Travelers' legal claims relating to the production of the LaMothe report-something which is not clear or that another panel might have decided the issue differently, these possibilities would still not rise to the level of arbitral misconduct under 52-418 (a)(3).
Given the limited scope of review, the fact that the panel CT Page 2203 considered the argument relating to the LaMothe report, and the failure of New Hampshire to bear its burden of showing that an egregious evidentiary error occurred depriving it of a "full and fair hearing", the application is denied. Travelers' counter motion to confirm is granted. Travelers' motion for sanctions is denied[5].
Douglas S Lavine Judge, Superior Court