[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION TO VACATE ARBITRATION AWARD AND DEFENDANT'S APPLICATION TO CONFIRM ARBITRATION AWARD
Yellow Page Consultants, Inc. (hereinafter also "YPC") is a corporation the purpose of which is to give advice to clients to reduce their costs of telephone directory advertising. On February 19, 1999, YPC and the defendant Kate's Paperie (hereinafter also "KP"), a specialty paper company operating three stores in New York, New York, entered into a Consulting Agreement which is attached as Exhibit A hereto which agreement provided, inter alia, that YPC would analyze the directory advertising program of KP and disclose information on how the advertiser may reduce its directory advertising expense in return for which KP agreed to pay YPC fifty percent of any yearly directory advertising savings which would result from the acceptance of information by the advertiser over a three year period. Defendant made no changes in its directory advertising in the first year and was not, therefore, billed for same. Defendant then made changes for year two and for year three. Plaintiff claims that in the second year defendant reduced its directory advertising expenses in the amount of $13,464, and YPC billed the defendant for $6,732. In the third year, defendant reduced its directory advertising expense in the amount of $24,345. The total savings amounted to $37,809, and the plaintiff billed the defendant in the amount of one-half thereof or $18,904.50 which the defendant has not paid.
In the second year of the contract KP informed YPC that it was making changes in its directory advertising program but declined to advise YPC of the changes or to meet with a representative of YPC. Hans Parrado, KP's Manager of Operations, advised the plaintiff that the publisher of the Yellow Pages had suggested changes, modifications and discounts to convince defendant to continue its business with them. Mr. Parrado also testified that on the basis of customer surveys as to how customers heard about its stores, defendant decided to curtail its directory advertising and shift to advertising in the New York Times, various New York magazines and on the Internet. CT Page 3954
Because of this dispute between the parties YPC initiated arbitration as provided in the Consulting Agreement. The American Arbitration Association appointed James Curtin as arbitrator on July 18, 2002. On November 13, 2002 the arbitrator made a written award, a copy of which award is attached as Exhibit B. The arbitrator's decision stated, interalia: "On the basis of the record in this case I do not find that the Claimant (YPC) provided information to the Respondent (KP) that resulted in savings to the Respondent . . . The more persuasive evidence in this case was that the changes in the Respondent's directory advertising program were completely unrelated to the information it received from the Claimant . . . The claim of Yellow Page Consultants, Inc. is denied."
 STANDARD OF REVIEW
The determination of the issues before this Court has to be based upon the evidence submitted to it with the briefs of the parties. Further, it is plaintiff's burden to produce sufficient evidence to invalidate the award. Awards based upon consensual arbitration are subject to only minimal judicial intervention. See Metropolitan District Commission v.AFSCME, 37 Conn. App. 1 (1995). Every reasonable presumption and intendment must be indulged in favor of the award. Cashman v. Sullivan Donega, P.C., 23 Conn. App. 24 (1990). Unless the submission provides otherwise, an Arbitrator has authority to decide factual and legal questions, and courts will not review the evidence, or where the submission is unrestricted, the Arbitrator's determination of legal questions. OG/O'Connell Joint Venture v. Chase Family LimitedPartnership, 203 Conn. 133 (1987). "When the scope of the submission award is unrestricted, the resulting award is not subject to de novo review for errors of law so long as the award conforms to the submission." SCRRA v. American Re-Fuel Co. of Southeastern Connecticut,44 Conn. Sup. 482, 484, 485 (1997), aff'd., 44 Conn. App. 728 (1997). "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of the issues, reserving explicit rights, or conditioning the award on court review." Id. 485. ". . . Any challenge to an award pursuant to CGS § 52-418 (2)(4) on the grounds that the arbitrators exceeded or imperfectly performed their powers is properly limited to a comparison of the award to the submission." Board of Education v. Local 818,5 Conn. App. 636, 639 (1985).
The plaintiff has cited CGS § 52-418 (a)(4) as a basis for the Court to vacate the Award. Said section reads as follows: ". . . or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter CT Page 3955 submitted was not made." Plaintiff further claims that "Validating this arbitration award would clearly violate the long-standing public policy of enforcing arm's length transactions between two commercial entities."
A leading case concerning the powers of the court to vacate an arbitration award is Garrity v. McCaskey, 223 Conn. 1 (1992). An arbitration award may be vacated on grounds of manifest disregard of the law under § 52-418 (a)(4) only when it "manifests an egregious or patently irrational application of the law. [This] ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's lack of fidelity to established legal principles." Id.
at 10.
"[Where] the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or theinterpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted,will they review the arbitrators' decision of the legal questionsinvolved." Trumbull v. Trumbull Police Local, 1745, 1 Conn. App. 207, 213
(1984) (emphasis added).
 ISSUES
1. Did the award violate public policy?
In its memorandum of law dated February 7, 2003 plaintiff cites two arguments for vacating the Arbitration Award. The second argument is that "Validating this arbitration award would clearly violate the long standing public policy of enforcing arms length transactions between two commercial entities." The parties agreed at oral argument that the submission by the parties to the arbitrator was unrestricted. The Court concludes that the Award conforms to the Submission.
"Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; (citations omitted) (2) the award violated clear public policy; (citations omitted) or (3) the award contravenes one or more of the statutory proscriptions of CGS Sec. 52-418."Garrity v. McCaskey, 223 Conn. 1, 6 (1992). Clearly, the award did not rule on the constitutionality of a statute.
"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy . . . In light ofthe strong public policy that favors arbitration and in deference to the CT Page 3956 existing statutory scheme through which the legislature has chosen to define this field, we decline the defendant's invitation to create a new exception independent of CGS Sec. 52-418." Garrity v. McCaskey, supra, page 7 (emphasis added).
However, one public policy can be subordinate to another more important public policy. In International Brotherhood of Police Officers v.Windsor, 40 Conn. Sup. 145 (1984), Satter, J., the public policy that a police officer should not be insubordinate to orders of his commanding officer gave way to the important public policy that police officers tell the truth. In that case, the police officer had refused to sign a false arrest warrant return. A police officer telling the truth is an important public policy that supersedes the public policy that an officer carry out the orders of his commanding officer.
Of course, there is a public policy to enforce contracts legally made. However, such a policy could serve as a basis for any contract dispute, and it is up to the finder of fact to determine whether the contract has been violated. In the case at bar, the arbitrator found that the contract had not been violated. Moreover, it is clear to this Court that the general principle or policy of enforcing contracts is subordinate to the strong public policy favoring arbitration. Accordingly, this argument of plaintiff is rejected.
2. Did the arbitrator exceed his powers or so imperfectly execute them that a mutual, final and definite award upon the subject matter submitted was not made?
This is the claim of the plaintiff under CGS Sec. 52-418 (a)(4). The second argument of the plaintiff is as follows:
By correctly identifying all relevant issues of fact and law but by refusing to apply the plain language of the contract, the Arbitrator exceeded his power under the law to reach his decision;
"Because the arbitration clause was an unrestricted submission (as in the case at bar), we will not review the arbitrator's legal conclusions. `Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. (Emphasis added.) Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved.'" Wachter v. UDV North America, Inc.,75 Conn. App. 538, 545 (March 2003). CT Page 3957
"[T]he law in this state takes a strongly affirmative view of consensual arbitration . . . Arbitration is a favorite method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes . . . As a consequence of our approval of arbitral proceedings, our courts generally have deferred to the award that the arbitrator found to be appropriate . . . The scope of review for arbitration awards is exceedingly narrow . . . Additionally, every reasonable inference is tobe made in favor of the arbitral award and of the arbitrator'sdecisions. (Emphasis added.) Id. 543.
As the Arbitrator stated in his decision in the case at bar: "Both the Claimant and the Respondent are in agreement that the key issue in this dispute involves the contractual language that `any change to an advertiser's DA program which results in savings will be attributed to information received from YPC.'" Although the Arbitrator did not specify his reasons for finding that the defendant had not breached the contract, under the principle that every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions, the Court concludes that the arbitrator agreed with the defendant that such language was unconscionable and, therefore, unenforceable. Further, there was a lack of consideration for this language.
Additionally, this language conflicts with the language in the consulting agreement that says: "The Advertiser agrees to pay YPC 50% of any yearly DA savings which would result from the acceptance ofinformation by the advertiser for (3) years." (Emphasis added.) It is well-settled law that if there is any ambiguity in a contract, the ambiguity is decided against the party who prepared the contract which, in this case, is the plaintiff. As the arbitrator found, there was no acceptance of information by the defendant that resulted in savings to the defendant. The arbitrator's language is: "I do not find that the Claimant provided information to the Respondent that resulted in savings to the Respondent . . . The more persuasive evidence in this case was that the changes in the Respondent's directory advertising program were completely unrelated to the information it received from the claimant."
"Even if the arbitrators were to have misapplied the law governing statutes of limitations, such a misconstruction of the law would not demonstrate the arbitrators' egregious or patently irrational rejection of clearly controlling legal principles. The defendant's claim in this case falls far short of an appropriate invocation of CGS Sec. 52-418 (a) (4) for a manifest disregard of the law . . . the defendant has not demonstrated anything more than his disagreement with the arbitrators' interpretation and application of established legal principles . . . CT Page 3958 Acceptance of his argument would turn every disagreement with arbitrators' rulings of law into an allegation of manifest disregard of the law. We have never construed CGS Sec. 52-418 (a)(4) so broadly and we decline to do so today." Garrity v. McCaskey, supra, pages 11, 12, 13.
At the most, what the Arbitrator did was a simple legal error that is not reviewable by the court." Wachter v. UDV North America, Inc., supra.
Accordingly, in the case at bar, this argument of the plaintiff is rejected.
 CONCLUSION
For the foregoing reasons, the application of the plaintiff to vacate the award is denied and the application of the defendant to confirm the award is granted.
Rittenband, JTR
 EXHIBIT A
CONSULTING AGREEMENT
SERVICES PROVIDED:
Yellow Page Consultants, Inc. ("YPC") agrees to review and analyze the advertiser's directory advertising ("DA") program and to disclose information on how the advertiser may reduce its DA expense.
Information disclosed may include advice on directories, sizes, strategies, copy, concepts, colors, market plans, discounts, etc.
YPC agrees to hold confidential all information pertaining to the advertiser's DA program and marketing plan. The advertiser agrees information conveyed by YPC is confidential and agrees not to disclose it to any third party.
YPC may also assist and advise on any additional ad (s) or enhancements to any existing ad (s). The cost for any additional ad (s) or enhancements to any existing ad (s) will not be used to offset any fee due to YPC.
FEE FOR SERVICE: CT Page 3959
The advertiser agrees to pay YPC 50% of any yearly DA savings which would result from the acceptance of information by the advertiser for three (3) years. A year is defined as the complete publication cycle for each directory in an advertiser's base DA program. Any credits received for past publisher errors or overbillings will be billed 50% of the total credit for one time only.
TERMS:
The fee for service for each of the three (3) years is due upon the acceptance of any information for that particular year.
Acceptance of information occurs when YPC receives written authorization from the advertiser or, if YPC receives no written authorization, when any change (s) is authorized with a directory publisher. Any change to an advertiser's DA program which results in savings will be attributed to information received from YPC.
The savings each year will be defined as that year's renewal rate of the advertiser's base DA program less the revised cost which would result from any information accepted by the advertiser in that particular year. Base DA program is defined as the advertiser's DA program in effect as of the date of this agreement per directory publisher's contracts.
Late payments will be subject to a monthly fee of 1.5% and the advertiser will be responsible for all reasonable costs of collection including legal fees and/or arbitration costs.
This agreement will be binding on any successors and/or assigns, branches, affiliates or subsidiaries of the advertiser.
IN THE EVENT OP NONPAYMENT:
The parties understand fees due cannot be fully calculated until the last book in an advertiser's base DA program publishes for the third time. Therefore, in the event of nonpayment, YPC reserves the right to collect liquidated damages. Liquidated damages will be one and one half (1 ½) times the gross savings which would result from the acceptance of information in the first year in which the acceptance of information occurs (in addition to the late fees and costs described above).
YPC reserves the right to require any dispute to be settled through binding arbitration administered by the American Arbitration Association, under its Commercial Arbitration Rules, which will render an CT Page 3960 award in accordance with Connecticut law in Hartford County. A judgment of any court having jurisdiction may be entered upon the award. The parties agree any judicial proceeding arising out of this agreement will be brought in Connecticut.
NO FEE PROVISION:
The advertiser is under no obligation to accept any information from YPC. If the advertiser does not accept any information, no fee is due.
 EXHIBIT B
Re: 12 147 00627 02
In the Manner of the Arbitration between
Yellow Page Consultants, Inc., Claimant and
Kate's Paperie, Respondent
I, the Undersigned Arbitrator, having been designated in accordance with the arbitration agreement entered into between the above named parties and dated February 19, 1999, and having been duly sworn and having duly heard the proofs and allegations of the Parties, do hereby AWARD as follows:
In its Demand For Arbitration, Claimant claims a breach of contract with a claim for relief in the amount of $23,519.07. Respondent did not file an answer. Under the Rule R-4(c) of the American Arbitration Association Commercial Dispute Rules it is deemed that Respondent denies the claim.
A hearing before the undersigned Arbitrator was held on Monday, September 23, 2002, at which the parties appeared with counsel and presented testimony and evidence. Post-hearing briefs were filed by both parties on October 14, 2002, and reply briefs were filed by both parties on October 21, 2002.
Background of the Dispute
Claimant, Yellow Page Consultants, Inc. is in the business of reviewing and analyzing a client's directory advertising program and advising clients on how to reduce directory advertising expenses. Respondent, Kate's Paperie, is a specialty paper company operating three stores in Manhattan, New York. CT Page 3961
On February 15, 16 or 17, 1999, Claimant's representative, Jason Genga, met with Respondent's Director of Marketing, Ms. Ann Sgarlato. He reviewed with her the Claimant's Consulting Agreement and left a copy with her. Otto Zalivary, Respondent's Director of Purchasing, reviewed the Consulting Agreement with Ms. Sgarlato and signed on February 19, 1999. Ms. Sgarlato then sent a copy by facsimile to Mr. Genga who signed for the Claimant dated February 19, 1999.
On March 2, 1999, Mr. Genga met with Ms. Sgarlato and discussed Respondent's Directory Advertising and Analysis consisting of a section devoted to questions of a client regarding its current directory advertising program and a section devoted to a discussion of such items as directory sizes, strategies, copy, design, graphics, color, market plans and discounts.
In a follow-up call during March 1999, Ms. Sgarlato informed Mr. Gengas that Respondent was not going to make changes to its directory advertising program that year. Claimant did not bill Respondent for that year.
In April 2000, the second year of the contract, Ms. Sgarlato informed Mr. Genga that Respondent was making changes in its directory advertising program, but she declined to send copies of the planned changes to Mr. Genga or to meet with him. On May 9, 2000, Hans Parrado, Respondent's Manager of Operations, informed Mr. Genga that the publisher of the yellow pages had suggested changes, modifications and discounts to convince Respondent to continue its business with them. Mr. Parrado also testified that on the basis of customer surveys as to how customers heard about its stores, Respondent decided to curtail its directory advertising and shift to advertising in the New York Times, various New York magazines and on the Internet.
The changes made by the Respondent in its directory advertising program in the year 2000 reduced its directory advertising expenses in the amount of $13,464.00 and Claimant billed Respondent $6,732.00 which Respondent has not paid. In 2001, the third year of the contract, Respondent reduced its directory advertising expense in the amount of $24,345.00. Claimant billed Respondent $12,172.50 that Respondent has not paid.
Relevant Contract Provisions
The Consulting Agreement (Joint Exhibit 1) provides in pertinent part that: CT Page 3962
Fee for Service — The advertiser agrees to pay YPC [Yellow Page Consultants, Inc.] 50% of any yearly DA [Directory Advertising] savings which would result from the acceptance of information by the advertiser for three (3) years.
Terms — Acceptance of information occurs when YPC received written authorization from the advertiser or, If YPC receives no written authorization when any change is authorized with a directory publisher, any change to an advertiser's DA program which results in a savings will be attributed to information received from YPC.
Position of the Parties
Claimant relies on the language of the duly executed Consulting Agreement to support its claim that Respondent owes the total of $30,701.84 in unpaid fees, interest, attorney fees, plus to-be-determined costs. It is Claimant's position that the plain language of the contract is unambiguous; that Claimant has performed its obligations under the contract; and that Respondent has saved over thirty thousand dollars on its directory costs since receiving Claimant's information. Further, Claimant emphasizes that the language in the parties' contract which states "Any change to an advertiser's DA program which results in savings will be attributed to information received from YPC" precludes any claim by Respondent that it had made changes for reasons not attributed to Claimant's services.
The Respondent challenges that the Claimant has not provided any written evidence showing the nature or content of recommendations that are specific to Respondent's business that resulted in savings to the Respondent. Further, that Respondent decided to reduce its directory advertising program after customer survey results and other information led it to conclude that its directory advertising program was not effective. In addition, Respondent argues that the language in the Consulting Agreement that Claimant relies upon is unconscionable and, therefore, unenforceable.
Discussion
Both the Claimant and the Respondent are in agreement that the key issue in this dispute involves the contractual language that "Any change to an advertiser's AD program which results in savings will be attributed to information received from YPC."
As recited above, it is Claimant's position that it performed its obligations under the agreement and provided information that resulted in CT Page 3963 savings when the Respondent reduced its directory advertising program. In support of this position, Claimant offered the testimony of Jason Genga, its Account Manager, who testified that after Respondent signed the Consulting Agreement he met with Ms. Ann Sgarlato, Respondent's Director of Marketing, and reviewed Claimant's Directory Advertising Analysis form. Mr. Genga further testified that after a follow-up call in 1999 when Me. Sgarlato informed him no changes would be made the only other contact he had with the Respondent was a call in 2000 when Ms. Sgarlato informed him that Respondent was making changes to its directory advertising program, but that she did not ask him for any recommendations; did not want to send him any copies of the changes and declined to meet with him.
Further, on cross-examination, Mr. Genga testified that he made no other recommendations in writing about changes that would save the Respondent money and was not sure what helped the Respondent to save money.
On the basis of the record in this case I do not find that the Claimant provided information to the Respondent that resulted in savings to the Respondent.
The only evidence the Claimant provided to support its $30,701.84 claim is the one meeting that Mr. Genga had with Ms. Sgarlato during which Claimant's Directory Advertising and Analysis form was discussed. It is true that during discussion of the Directory Advertising and Analysis form such items as directory sizes, copy, color, market plans and discounts were discussed and these items are listed in the Consulting Agreement as information that may be disclosed to an advertiser. However, the Claimant failed to demonstrate that it provided information with regard to the Respondent's directory advertising that resulted in any savings to the Respondent.
The more persuasive evidence in this case was that the changes in the Respondent's directory advertising program were completely unrelated to the information it received from the Claimant.
Arbitrator's Award
The claim of Yellow Page Consultants, Inc. is denied.
"The administrative fees and expenses of the American Arbitration Association totaling $900.00 and the compensation of the arbitrator totaling $2250.00 shall be borne equally by the parties and have been paid."
This award is in full and final settlement of any and all claims submitted to this Arbitration. CT Page 3964