LORRAINE COTE *v.* COLONIAL PENN FRANKLIN INSURANCE COMPANY
(AC 24938)

Lavery, C. J., and DiPentima and Hennessy, Js.

Argued January 4—officially released March 29, 2005

*Max F. Brunswick*, with whom were *Richard A. Knapp* and, on the brief, *Herbert Watstein*, for the appellant (plaintiff).

*Christopher F. Wanat*, with whom, on the brief, was *Mario Di Monaco*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Lorraine Cote, appeals from the judgment of the trial court denying her application to vacate an arbitration award. On appeal, the plaintiff claims that the court improperly failed to vacate the arbitration award because the arbitrator misapplied the law of proximate cause and aggravation of a preexisting condition. We affirm the judgment of the trial court.

This case arises out of a January 23, 1999 automobile accident between the plaintiff and Gregory Guy. On

November 17, 2000, the plaintiff instituted a civil action against Guy, alleging that he negligently had operated a motor vehicle owned by Laura Szoldra. In October, 2001, the parties settled their dispute for $20,000, the liability limits of Szoldra's underlying automobile bodily injury policy. On October 29, 2001, the plaintiff instituted an action against the defendant, the Colonial Penn Franklin Insurance Company, her automobile insurer. Her claim was made pursuant to her uninsured-underinsured motorist policy to recover for injuries sustained in the collision. The action later was withdrawn after the parties agreed to submit their dispute to arbitration.

The arbitration took place on April 14, 2003, before attorney Thomas P. Barrett. On June 23, 2003, the arbitrator issued an award in favor of the plaintiff. She was awarded $86,308 in damages, less the prior payment of $20,000, for a final award of $66,308. On June 23, 2003, the plaintiff filed with the arbitrator a motion to vacate the arbitration award. Subsequently, she filed in court an application to vacate the award. On October 20, 2003, the court heard oral argument and denied the application on November 18, 2003. This appeal followed.

The plaintiff claims that the arbitration award should have been set aside because the arbitrator applied an incorrect standard of proximate cause and aggravation of a preexisting condition and, therefore, improperly failed to award damages for both her arthroscopic surgery and total knee replacement surgery. She bases her argument on the holding in *Garrity* v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992), which stated: "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to [General Statutes] § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not

made." (Internal quotation marks omitted.) *Garrity* v. *McCaskey, supra*, 10. We disagree.

Our Supreme Court "has declared on numerous occasions that arbitration is a creature of contract, whereby the parties themselves, by agreement, define the powers of the arbitrators. . . . Moreover, [our Supreme Court has] stated that when the parties have established the authority of the arbitrator, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the parties have not restricted the scope of the arbitrator's authority, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . .

"The long-standing principles governing consensual arbitration are, however, subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey, supra*, 223 Conn. 6, this court listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418 (a)[1]. . . . The judicial recognition of these

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 426–28, 747 A.2d 1017 (2000).

We first note that the parties disagree about whether the submission to arbitration was restricted or unrestricted. The plaintiff maintains that the submission was restricted because the parties' agreement stated that "[t]he arbitrator agrees to decide the issues submitted in accordance with the laws of the State of Connecticut." We agree with the defendant that the submission was unrestricted. As set forth in the parties' contract: "The arbitrator shall not be provided with a copy of the submission." Both parties agree that the arbitrator was never provided with the details of their contract. Without the contract ever having been submitted to the arbitrator, the submission could not have been restricted. See *Naek Construction Co.* v. *Wilcox Excavating Construction Co.*, 52 Conn. App. 367, 373, 726 A.2d 653 (1999).

Even if the submission were restricted, we would agree with the defendant and the court that the arbitrator did not adopt an incorrect standard for proximate cause and aggravation of a preexisting condition. In Connecticut, "[t]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the neces-

sary causal connection. . . . This causal connection must be *based upon more than conjecture and surmise*." (Emphasis in original; internal quotation marks omitted.) *Malloy* v. *Colchester*, 85 Conn. App. 627, 634, 858 A.2d 813, cert. denied, 272 Conn. 907, 863 A.2d 698 (2004).

The plaintiff contends that having found that the arthroscopic surgery was causally related to the tortfeasor's conduct, the arbitrator also should have found that the knee replacement was related. The plaintiff relies on cases such as *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 696 A.2d 363 (1997), for the proposition that "[a] plaintiff who has a dormant, asymptomatic arthritic condition that is subsequently aggravated by an injury caused by the defendant's negligence is entitled to recover full compensation for the resulting disability, even though her resulting disability is greater than if she had not suffered from the arthritic condition." Id., 310–11.

We agree with the arbitrator that this is not a *Tuite* situation. The plaintiff had systemic arthritis for quite some time prior to the accident. That disease infiltrated various parts of her body, and problems continued to develop, without trauma, in her back, hips, cervical spine and left knee. Although we agree with the plaintiff that a person with a symptomatic condition may recover for aggravation of that condition caused by a defendant, the plaintiff must prove that the aggravation was caused by the acts complained of and that it was not merely a worsening of the condition that would have occurred naturally without the trauma. The arbitrator's findings show that he was not persuaded that the plaintiff had met her burden of establishing that connection.

The arbitrator did allow recovery for some aggravation of the plaintiff's condition. In his decision, he stated that he was "persuaded . . . that [the plaintiff's] left

knee pain worsened within weeks, postaccident and then continued to worsen rapidly, resulting in arthroscopic surgery about six months postaccident. [He] resolve[d] the causation issue as to this first surgery in the [plaintiff's] favor. This [was] a close question. [He was] mindful that [her treating physician's] initial reports seem[ed] to reflect that he had not made the causal connection and [that] the operative report refer[red] to degenerative tears. But [he] believe[d] [the plaintiff] when she testifie[d] that within weeks, her left knee had become considerably more symptomatic. Trauma can exacerbate underlying osteoarthritis. The force of the collision, the more than coincidental worsening of symptoms postaccident, the opinion of [the plaintiff's treating physician], the activity status of the [plaintiff] immediately before the accident, and the testimony of [the plaintiff led him] to conclude that she . . . carried [the] issue by a preponderance of the evidence."

Although when discussing proximate cause in his arbitration award, the arbitrator did use the term "predominantly related," which contemplates a stricter standard than the substantial factor test, his other findings support the conclusion that the plaintiff could not succeed on her claim regarding her knee replacement under either test. The arbitrator found the following facts: "As to the total knee replacement in September of 2002, although I find that there was some trauma to the [plaintiff's] left knee in the accident, it was not significant. By [the plaintiff's] own admission, *an increase in symptoms did not begin for some time.* A significant trauma would have certainly resulted in acute discomfort immediately. *Consequently, it seems probable that the exacerbation from the accident would have mostly run its course once the arthroscopy was performed.* In fact, [the plaintiff] did well for a while, postsurgery. She had other complaints, including . . .

her right knee, between the surgery and another exacerbation in October of 2001, more than two years postsurgery. In October of 2001, her right hip flared up, and this affected her left knee. [The treating physician's] impression at that time was an 'acute exacerbation of her left knee osteoarthritis.' The [plaintiff's] degenerative disease was not cured by [her July, 1999] surgery. *It continued to advance, as it did in other parts of her body.* (See for example the lumbosacral findings in a [March, 2003] diagnostic study.) *Making the causal connection between whatever trauma was suffered by [the plaintiff] to her left knee at the time of the accident, and her total knee replacement in September of 2002, requires a leap over too wide a medical and evidentiary gap.*" (Emphasis added.)

The arbitrator clearly found that the medical evidence did not show a causal connection between the motor vehicle accident and the knee replacement surgery and, therefore, the accident was not a substantial factor in the need for surgery. His findings support his conclusion that the plaintiff's underlying condition was the reason for the knee replacement surgery and not aggravation to the condition caused by the collision. In order to find for the plaintiff as she requests, we would have to disregard the facts as found by the arbitrator. Accordingly, the court correctly refused, as do we, to substitute its judgment regarding the facts for that of the arbitrator. See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* supra, 252 Conn. 432 & n.8.

The judgment is affirmed.

In this opinion the other judges concurred.