## NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, LOCAL R1-200 *v.* CITY OF BRIDGEPORT
## (AC 26919)

Bishop, Gruendel and Lavine, Js.

Argued October 16, 2006—officially released January 2, 2007

*John M. Walsh, Jr.*, for the appellant (plaintiff).

*John R. Mitola*, associate city attorney, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, the National Association of Government Employees, Local R1-200, appeals from the order of the trial court denying its application to vacate an arbitration award rendered in favor of the defendant, the city of Bridgeport. On appeal, the plaintiff claims that the court improperly concluded that the arbitration award was not a result of a manifest disregard of the law by the presiding arbitrator. We disagree and affirm the judgment of the trial court.

The record discloses the following procedural history and facts that are relevant to our discussion of the issues on appeal. On August 30, 1988, the city of Bridgeport board of education hired James McCarthy as a school security guard.[1] On September 16, 1991, McCarthy was robbed at gunpoint and had gunshots fired at him while on patrol at a local school. As a result of this incident, McCarthy was referred for psychiatric care and was rendered totally disabled from employment. On May 5, 1992, McCarthy's physician authorized a trial return to work, but after three weeks, McCarthy found himself incapable of performing the necessary functions of a security guard and, accordingly, returned to disability leave on June 5, 1992.

---

[1] McCarthy was a member of the plaintiff at all times relevant to this matter.

On September 1, 1992, McCarthy received medical clearance to return to work as a school security guard and conveyed this information to Albert Berarducci, the director of school security. The defendant, however, informed McCarthy that there were no security guard positions available at that time, and the defendant entered into an agreement with the plaintiff to find him another position with the city.

After waiting six weeks for the defendant to secure an alternate position for McCarthy, the plaintiff notified the defendant of its intent to utilize the appropriate grievance procedures and on November 9, 1992, filed a grievance on behalf of McCarthy seeking his reinstatement. The grievance proceeding was heard on May 12, 1993, but prior to its conclusion, the parties signed a stipulated agreement that provided, in sum, that the defendant would write a letter to the state pension commission supporting McCarthy's application for a disability claim[2] and that the plaintiff would withdraw the grievance. The parties also agreed that if the disability claim was denied by the state pension commission, the plaintiff could resubmit the grievance.

By way of letter dated June 21, 1996, the state pension commission informed McCarthy that his request for service connected disability was denied. Subsequently, on April 2, 2000,[3] the plaintiff refiled its grievance seeking McCarthy's reinstatement. A hearing on its merits was scheduled for March 4, 2002. Prior to the hearing, each party submitted its version of the issues to be decided by the arbitrator, with the understanding that the arbitrator was empowered to choose which submission better defined the issues for decision. The arbitrator, James H. Stewart, chose the defendant's

[2] The letter indicated that all parties agreed that McCarthy could no longer perform his duties as a security guard due to his work-related injury.

[3] The record does not disclose the reason for the four year hiatus from 1996 to 2000.

submission, which stated: "Did the city of Bridgeport violate the contract in the manner in which it handled Mr. McCarthy's separation from employment in March 1995? If so, what shall the remedy be?" On May 28, 2002, Stewart issued his award and concluded that McCarthy had been treated fairly by the defendant and that the defendant did not violate the contract in the manner in which it handled McCarthy's separation from employment. On June 27, 2002, the plaintiff filed an application to vacate the arbitration award with the trial court. The court denied the application after concluding that it was not obvious, on the basis of the language of the agreement and the facts of McCarthy's situation, that the arbitrator patently and irrationally rejected controlling law in making his award, and, thus, the plaintiff had failed to meet its burden of proving that the arbitrator manifestly disregarded the law. This appeal followed. Additional facts will be set forth as needed.

At the outset, we note that the plaintiff concedes that the submission to the arbitrator was unrestricted, and the plaintiff does not argue that the award fails to conform to the submission. It does argue, however, that the arbitrator's award constitutes a manifest disregard of the law in violation of General Statutes § 52-418 (a) (4).[4]

Our analysis is guided by well established principles regarding a party's application to vacate a consensual arbitration award resulting from an unrestricted submission. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of

---

[4] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds . . . (4) [that] the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"Even in the case of an unrestricted submission, [however], we have . . . recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80–81, 881 A.2d 139 (2005). This appeal is limited to the third ground for vacatur, namely, noncompliance with § 52-418 (a) (4).

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly

executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.[5]

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an

---

[5] "The exceptionally high burden for proving a claim of manifest disregard of the law under § 52-418 (a) (4) is demonstrated by the fact that, since the test was first outlined in *Garrity* [v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992)], this court has yet to conclude that an arbitrator manifestly disregarded the law." *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 307 n.8, 901 A.2d 1198 (2006).

arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; internal quotation marks omitted.) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304–305, 680 A.2d 1274 (1996).

The plaintiff argues that the arbitrator manifestly disregarded the law by concluding that (1) although McCarthy was laid off, it was not a general layoff for lack of work, (2) article nine[6] of the collective bargaining agreement (agreement), pertaining to layoffs and recalls, did not apply because McCarthy was physically and emotionally unable to perform the duties of a security guard, and (3) article two[7] of the agreement, pertaining to management rights, was the relevant and applicable section under the circumstances of this case. We are unpersuaded.

In the present case, the arbitrator was presented with the broad question of whether the defendant violated the agreement in the manner in which it handled McCarthy's separation from employment. The arbitrator,

---

[6] Article nine, entitled "Lay-Off and Recall," provides in pertinent part: "In the event of a lay-off within Civil Service Classifications, the employee with the least seniority shall be laid off first. Subsequent recalls to open positions in that job classification shall be in reverse order of the lay-off. Any employee occupying a Civil Service position that is subject to be laid off, shall have the right to bump, laterally or down, to a previously held classification within the City, provided said employee has greater seniority than employees occupying the lower classification. The least senior employee within the classification shall be bumped. . . ."

[7] Article two, entitled "Management Rights," provides in pertinent part: "[T]he City will continue to have, whether exercised or not, all the rights, powers and authority hereto before existing, including but not limited to the following . . . maintain the efficiency of governmental operations; establish and revise or discontinue policies, programs and procedures to meet changing conditions and to better serve the needs of the public; exercise control and discretion over its . . . work . . . and fulfill all of its responsibilities."

before issuing his award, deemed that the entire course of conduct of both parties throughout this entire eleven year ordeal, and not conduct from a specific incident or date, was the proper evidentiary source on which to make his determination.[8] Accordingly, the arbitrator considered (1) the parties' agreement that McCarthy was unable to perform the duties of a security guard and that the defendant would assist him in his attempt to collect disability, (2) medical reports that documented McCarthy's inability to perform the necessary functions of a security guard and (3) evidence that the defendant attempted to find him an alternate position with the city, in concluding that "[t]he [defendant] under its [a]rticle [two] authority established a contractually fair set of resolves to assist an employee while maintaining the integrity of its [board of education] security operation; [that] [t]he contract was not violated; [and that McCarthy] was treated fairly throughout this matter of some [eleven] years. . . ."

"[Courts] are not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or applicability of laws urged upon it." (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 9. Even if an arbitrator misapplies the relevant law, "such a misconstruction of the law [does] not demonstrate the arbitrator['s] egregious or patently irrational rejection of clearly controlling legal principles." Id., 11–12. Thus, on the basis of the entire record, we cannot say that the issue of whether to apply article nine or two to this matter was so well defined and explicit as to command only one logical conclusion or that the interpretation adopted by the arbitrator was so egregious as to border on the irrational.

---

[8] As previously noted, "the courts will not review the evidence considered by the arbitrators . . . ." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80.

Moreover, and as previously discussed, in analyzing a claim that an arbitration award is in manifest disregard of the law, we are guided by the factors set forth in *Garrity*. The moving party must show not only that the arbitrator appreciated the existence of a well defined, explicit and clearly applicable legal principle but also that he deliberately ignored the governing law. Id., 9. Here, to issue an award with manifest disregard of the law, the arbitrator must have (1) known that the agreement required him to apply article nine and to allow, as the plaintiff contends, McCarthy to exercise his bumping rights to retain his position as a security guard, and (2) ignored this well defined, explicit and clearly applicable legal principle. See *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 308; *Garrity* v. *McCaskey*, supra, 223 Conn. 11–12. In this instance, however, the arbitrator did not ignore but, in fact, acknowledged and distinguished article nine from article two in the context of McCarthy's situation. Thus, even if we were to conclude that the relevant provisions of the agreement are well defined, explicit and clearly applicable, we could not conclude that the arbitrator appreciated but ignored them in fashioning his award.

In conclusion, given the arbitrator's finding that McCarthy was unable to perform the duties of a security guard, it was not unreasonable for him to deduce that article two applies to the facts at hand rather than article nine. The language of article nine does not specifically address individuals who are laid off for being unable to perform the duties of their position. Thus, the plaintiff's arguments do not establish that the arbitrator misapplied the law, let alone that his award reveals a " 'manifest disregard' " for it. *Garrity* v. *McCaskey*, supra, 223 Conn. 9. The court, therefore, properly denied the plaintiff's application to vacate the award.

The judgment is affirmed.

In this opinion the other judges concurred.