TOWN OF MIDDLEBURY *v.* TEAMSTERS LOCAL
UNION NO. 677
(AC 18263)

O'Connell, C. J., and Landau and Stoughton, Js.[1]

Argued December 6, 1999—officially released April 4, 2000

*John T. Fussell,* for the appellant (Teamsters Local Union No. 677).

*Robert W. Smith,* for the appellee (town of Middlebury).

<hr />

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

STOUGHTON, J. Teamsters Local Union No. 677 (union)[2] appeals from the trial court's judgment confirming an arbitrators' award in favor of the town of Middlebury (town). The union claims that the court improperly (1) granted the town's motion to confirm the award, (2) refused to find that the submission to the arbitrators was restricted and, thus, subject to de novo review, (3) found that the decision of the arbitrators conformed to the submission and (4) failed to find that the arbitrators exceeded their powers or so imperfectly executed them that a material, final and definite award on the subject matter was not made. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The grievant, Ronald Fayer, was employed by the town as the chief mechanic in the town garage. On December 11, 1996, the town discharged the grievant, alleging insubordination and theft.[3] On January 26, 1998, a panel of three arbitrators, by majority decision, denied a grievance filed by the union on his behalf and concluded that the town had just cause to terminate the grievant. The trial court rendered judgment confirming the award, and the union filed this appeal.

The union and the grievant were parties to a collective bargaining agreement covering the town's public works department employees. Article II of the agreement provides, in part, that "the management . . . manning

---

[2] The caption in this case, which was taken from the application to vacate, incorrectly lists the applicant union as the defendant. We refer to the parties by their names in this opinion.

[3] The grievant had been discharged by the town previously, on April 3, 1996, for insubordination and theft. The grievant's challenge to that discharge was arbitrated on August 9, 1996, and a decision on the theft charge was rendered in the grievant's favor. Thereafter, the town was ordered to reinstate the grievant.

. . . and direction of the working forces will vest solely in the employer, including the right . . . for proper cause to discipline and discharge . . . employees . . . ." Article IX describes the grievance procedure to be followed in the event of grievances or disputes between the parties. It provides, in part, that if a dispute as to the interpretation and application of clauses in the agreement is not otherwise resolved in accordance with the procedures set out in the agreement, either party may submit the matter for arbitration to the state board of mediation and arbitration according to its rules and regulations. Article XV provides, in part, that the employer may immediately discharge employees for theft.

The town offered as evidence of theft three invoices billed to the grievant but submitted to the town for payment, two prior invoices billed to the town for the grievant's personal automobile parts, and approximately sixty invoices for missing parts and parts that could not be accounted for. The union claimed that (1) the termination was based solely on the three invoices, (2) the town, without prior notice, expanded its basis for termination and (3) the additional grounds were the subject of a prior arbitration in which the grievant had been exonerated. See footnote 3. It claimed further that it was common practice for the mechanics at the garage to order parts for their own use, which would be delivered to the town with an invoice identifying the mechanic as the customer. It claimed also that the payment by the town for parts delivered to the grievant resulted from an honest mistake and that the grievant paid for the parts when the mistake was discovered. In addition, the union contested the claims made by the town that the grievant received all invoices, and that his job description required inventory control and the use of work orders for most of the parts involved. A majority of the arbitration panel concluded, however,

that the town had sustained its burden of proof and that it had just cause to terminate the grievant.

The trial court did not file a memorandum of decision but noted that the application to vacate the award was denied "pursuant to *Garrity* v. *McCaskey*, 223 Conn. 1 [612 A.2d 742] (1992)," and confirmed the arbitration award. On appeal, the union claims, inter alia, that the award does not conform to the submission. It claims specifically that the subject matter of the submission was the discharge of the grievant for theft, that the evidence of theft presented at the pretermination hearing related to three specific invoices and that the arbitrators were restricted to consideration of those three invoices. It claims further that despite this alleged restriction and without prior notice, the panel, in violation of principles of res judicata, considered two invoices relating to an earlier charge of theft against the grievant, which had been the subject of a previous arbitration between the parties in which the grievant was exonerated. The union claims that consideration of those two additional invoices by the arbitrators amounted to an egregious misperformance of duty. We do not agree.

"When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." (Citation omitted.) Id., 4.

We agree with the implicit finding of the trial court that the submission in this case was unrestricted. Accordingly, our review is limited to a comparison of the award with the submission; *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 338–39,

555 A.2d 406 (1989); and the union is not entitled to de novo review. We do not review the evidence on the arbitrators' decision of the legal questions involved. See *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340–41, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985).

Here, the issue submitted to the panel of three arbitrators was: "Did the Employer have just cause to terminate [the grievant]? If not, what shall the remedy be?" A majority of the panel concluded that "the Town sustained its burden of proof. . . . We find that while there was a practice of mechanics' ordering parts for their own use and . . . accepting delivery for those parts at the Town Garage, bills for those parts were not to be submitted to nor paid by the Town. The evidence indicates that the only person to submit such bills was the Grievant. It is further troubling that the Grievant had more than one opportunity to review the invoices before submitting them to the Town for payment. . . . [T]he Town had just cause to terminate the Grievant, and . . . the grievance should be denied." Because we determine that the submission was unrestricted and the award conformed to the submission, we do not need to address the union's other claims.

The judgment is affirmed.

In this opinion the other judges concurred.