CONNECTICUT STATE POLICE UNION ET AL. *v.*
DEPARTMENT OF PUBLIC SAFETY ET AL.
(AC 24676)

Schaller, Bishop and Hennessy, Js.

---

Argued October 28—officially released December 28, 2004

*Kevin C. McDonough,* for the appellant (plaintiff Michael Fosque).

*Thomas P. Clifford III,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellees (defendants).

*Opinion*

HENNESSY, J. The plaintiff Michael Fosque[1] appeals from the judgment of the trial court rendered after it

---

[1] The Connecticut State Police Union (union) also was a plaintiff at trial. The union is not a party to this appeal. We therefore refer in this opinion to Fosque as the plaintiff.

denied his application to vacate an arbitration award that upheld his dismissal from the named defendant, the department of public safety[2] (department), as a state police trooper. On appeal, the plaintiff claims that the court abused its discretion in finding that the arbitration award conformed to the submission and that the arbitrator did not exceed his powers in making his award. We affirm the judgment of the trial court.

The following facts are necessary for the resolution of the plaintiff's appeal. At all relevant times, the plaintiff was an employee of the department and was subject to a collective bargaining agreement with respect to wages, hours and conditions of employment. On September 24, 1997, following an internal affairs investigation, the plaintiff settled disciplinary charges against him by executing a stipulated agreement that provides in relevant part: "[Trooper First Class] Fosque shall refrain from all alcohol consumption both on and off duty." On October 13, 2000, additional disciplinary charges against the plaintiff were settled by a stipulated agreement that again provided that the plaintiff was to refrain from alcohol consumption both on and off duty.[3] Following his reinstatement, on October 27, 2001, two

---

[2] The office of labor relations also was a defendant at trial.

[3] The stipulated agreement, signed October 13, 2000, provides in relevant part: "8. If reinstated, [Trooper First Class] Fosque will submit to random alcohol and drug testing (no reasonable suspicion required) for one year following reinstatement at the discretion of the Department of Public Safety.

"9. If reinstated, [Trooper First Class] Fosque shall refrain from all alcohol and substance abuse consumption both on and off-duty.

* * *

"12. Any future [department of public safety internal affairs] investigations which sustain the use of alcohol or drugs will result in termination."

That agreement was amended by an addendum, dated February 26, 2001, which states in relevant part: "#8 This random Alcohol and Drug Testing will be administered by Public Safety [employee assistance program] or the designee of the Department of Public Safety. Testing will be for any alcohol use, illicit drug use or any indication of abuse of drugs. The method of testing will be determined by the Department of Public Safety in consultation with Public Safety [employee assistance program] or the agency's designee."

sergeants from the state police internal affairs unit arrived at the plaintiff's residence in order to perform a random drug and alcohol test. The sergeants detected the odor of alcohol on the plaintiff's breath and noted that his eyes were bloodshot and watery, and that he exhibited slurred speech. After attempting to contact his union representative, the plaintiff provided the sergeants with three breath samples[4] as well as a hair sample.[5] The results of the breath and hair samples, as well as the sergeants' observations, were conveyed to Joseph Froehlich, a sergeant with the internal affairs unit who was conducting the investigation of the plaintiff. On the basis of that information, Froehlich concluded that the plaintiff had violated the department administrative and operations manual, as well as the terms of the two stipulated agreements.

On December 6, 2001, the department notified the plaintiff that his employment would be terminated effective December 27, 2001. The plaintiff challenged his termination by filing a grievance that was denied at step two of the contractual grievance procedure. The matter then was submitted for arbitration, wherein the arbitrator determined that the plaintiff was terminated for just cause, and that the grievance should be dismissed. The plaintiff and his union then filed an application to vacate the arbitration award, alleging that the award did not conform to the submission and that the arbitrator exceeded his powers in violation of General Statutes § 52-418 (a) (4).[6] The court denied the applica-

[4] The sergeants administered the breath tests using an Intoxilyzer 400, a handheld device used for measuring blood alcohol content. The first breath sample yielded a blood alcohol content of .000. The second and third breath samples yielded blood alcohol contents of .104 and .102, respectively.

[5] The hair sample obtained by the sergeants could not be analyzed.

[6] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

tion to vacate and granted the department's motion to confirm the arbitration award. This appeal followed.

On appeal, the plaintiff claims that the court abused its discretion in finding that the arbitration award conformed to the submission and that the arbitrator did not exceed his powers in making his award. We will examine each of those claims in turn.

I

The plaintiff first claims that the court abused its discretion in finding that the arbitration award conformed to the submission. Specifically, the plaintiff argues that the court should have examined the arbitrator's reasoning in arriving at the award. We disagree.

"With a voluntary, unrestricted submission to an arbitrator, as is the case before us, the court may only examine the submission and the award to determine whether the award conforms to the submission. . . . In making such a comparison when the submission is unrestricted, the court will not review the evidence or legal questions involved, but is bound by the arbitrator's legal and factual determinations." (Citation omitted; internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel*, 65 Conn. App. 425, 430, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001).

Here, the submission presented to the arbitrator asked: "Was the [plaintiff] terminated for just cause? If not, what shall be the remedy consistent with the [union] [c]ontract?" The arbitrator found that "[the plaintiff] was terminated for just cause. The termination is sustained and the grievance is denied." Because the submission was unrestricted,[7] the court was confined

---

[7] "A submission to arbitration is unrestricted if there is no express language restricting the breadth of issues, reserving explicit rights or conditioning the award on court review." *Wachter* v. *UDV North America, Inc.*, 75 Conn. App. 538, 545 n.9, 816 A.2d 668 (2003).

to an examination of "the submission and the award to determine whether the award conform[ed] to the submission." (Internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel*, supra, 65 Conn. App. 430. Here, an examination of the submission and the award reveals that the arbitrator decided only the issues presented. We therefore conclude that the court appropriately declined to examine the arbitrator's reasoning in arriving at the award and properly found that the award conformed to the submission.

## II

The plaintiff next claims that the court abused its discretion in finding that the arbitrator did not exceed his powers in making his award. Specifically, the plaintiff argues that the arbitration award was based on such an egregious error that it constituted a manifest disregard of the law. We disagree.

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) . . . . We emphasize, however, that the 'manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992).

The plaintiff argues that the arbitrator's finding that the Intoxilyzer 400 was a reliable instrument for determining the plaintiff's blood alcohol level constituted a manifest disregard of the law. As support for his argument, the plaintiff contends that only Intoxilyzer 5000 results are admissible in court in criminal prosecutions to prove a defendant's blood alcohol level. In this case, however, the import of the Intoxilyzer test was not to determine the quantity of alcohol the plaintiff had consumed, but rather to determine whether he had

in fact consumed *any* alcohol. The arbitrator's reliance on the results of the Intoxilyzer 400, as well as the firsthand observations of the sergeants that confirmed those results, clearly did not constitute a manifest disregard of the law.

The judgment is affirmed.

In this opinion the other judges concurred.