******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELM CITY LOCAL, CACP *v.* CITY
OF NEW HAVEN
(AC 47260)

Bright, C. J., and Moll and Clark, Js.

*Syllabus*

The plaintiff union appealed from the judgment of the Superior Court denying
its application to vacate an arbitration award in favor of the defendant city.
The plaintiff claimed that the court improperly concluded that the arbitration
panel did not exceed its powers when it determined that the defendant had
just cause to terminate the employment of one of the plaintiff's members,
an officer with the defendant's police department. *Held*:

The trial court properly concluded that the arbitration award conformed to
the parties' submission to the arbitration panel, the arbitration panel having
decided an issue that the parties had given it the authority to decide.

This court declined to review the plaintiff's claim that the trial court improp-
erly refused to vacate the award because the arbitration panel's reliance on
a certain expert opinion constituted a manifest disregard of the law, as the
plaintiff abandoned that claim in the Superior Court and failed to adequately
brief it before this court.

Argued January 7—officially released February 25, 2025

*Procedural History*

Application to vacate an arbitration award, brought
to the Superior Court in the judicial district of New
Haven and tried to the court, *Stewart, J.*; judgment
denying the application, from which the plaintiff
appealed to this court. *Affirmed.*

*Alexander T. Taubes*, for the appellant (plaintiff).

*Floyd J. Dugas*, with whom was *Rebecca Goldberg*,
for the appellee (defendant).

*Opinion*

CLARK, J. The plaintiff union, Elm City Local, CACP,
appeals from the judgment of the Superior Court deny-
ing its application to vacate an arbitration award (appli-
cation) in favor of the defendant, the city of New Haven.

On appeal, the plaintiff claims that the court improperly concluded that the arbitration panel did not exceed its powers when it determined that the defendant had just cause to terminate the employment of Jason Santiago, one of the plaintiff's members, with the New Haven Police Department (department). In particular, the plaintiff claims that the court should have vacated the arbitration award because (1) the award failed to conform to the parties' submission, and (2) the arbitration panel manifestly disregarded the law. We affirm the judgment of the court.

The following facts, as found by the arbitration panel or as are otherwise undisputed in the record,[1] and procedural history are relevant to this appeal. On December 25, 2019, Santiago, who was then an officer with the department, was called to the scene of a disabled vehicle on Lombard Street in New Haven. When he arrived, accompanied by two fellow officers, Santiago encountered Officer Michael Hinton, who was also an employee of the department, Luis Rivera, and Julie Cruz. Rivera and Cruz were arguing, and one of Santiago's fellow officers escorted Cruz away from Rivera. Rivera said: "Don't touch her, don't fucking touch her." Santiago told Rivera to relax, and Rivera responded: "You relax." Santiago said that he had "had enough of this guy," turned Rivera around, and attempted to handcuff him. Rivera began to resist, and a brief struggle ensued during which Santiago twisted Rivera's leg in a "pain compliance technique." Eventually, Rivera was handcuffed. Santiago then kicked Rivera in the groin while he lay handcuffed on his stomach.

After he kicked Rivera, Santiago, assisted by Hinton, lifted Rivera up by his left ponytail. As soon as Rivera

---

[1] On January 12, 2024, the plaintiff filed a certificate with this court pursuant to Practice Book § 63-4 (a) (3), stating that no transcripts were necessary for this appeal. Any transcripts of the arbitration hearings and of proceedings in the Superior Court are thus not part of the record on appeal.

got to his feet, the officers' body worn camera footage recorded a sound that resembled spitting. Santiago then punched Rivera in the face, and Rivera fell to the ground. Hinton said: "Bro why you spit." Santiago pointed his finger in the area of Rivera's left ear and said: "That's assault second on a police officer." Rivera directed a series of expletives at the officers and spat blood on the road. At some point, a woman named Jessica Morales arrived at the scene, and Santiago asked her if she was Rivera's wife, to which she answered that she was. Santiago then asked who Cruz was, and said: "Who are you to him  .  .  .  you're the side chick, huh?"

Rivera was arrested, and Assistant State's Attorney Jennifer Lindade was assigned to prosecute the case. After Lindade reviewed footage of the incident, she wrote to the department's internal affairs division to express "serious concerns about the force used against [Rivera]." The department then opened an internal affairs investigation, which was conducted by Detective Jessica Stone and Sergeant Christopher Fennessey.

In the course of the investigation, Stone interviewed Officer David Acosta, a use of force trainer with the department. Acosta reviewed video footage of the incident and told Stone that, in his view, Santiago's kick to Rivera's groin, as well as his decision to pull Rivera by his hair, violated the department's use of force policy. He further concluded that Santiago had been justified in punching Rivera in the face. Stone and Fennessey ultimately found, in line with Acosta's conclusions, that Santiago had acted unreasonably when he kicked Rivera in the groin and pulled his hair, but that he had acted reasonably when he punched Rivera in the face. They accordingly concluded that Santiago had violated department policy.

Chief Otoniel Reyes then ordered a *Loudermill* hearing.[2] At the hearing, Santiago did not take responsibility or express remorse for his actions, which caused Reyes concern that he might engage in such conduct again. Reyes recommended to the New Haven Police Commission that Santiago be terminated from his employment,[3] and Santiago was subsequently discharged.

Santiago then filed a grievance pursuant to the collective bargaining agreement between the plaintiff and the defendant, which provided that officers shall not be terminated except for "just cause." After exhausting preliminary steps with the department and the defendant, the plaintiff filed a request for mediation and arbitration with the State Board of Mediation and Arbitration (board) in the Connecticut Department of Labor. Five remote hearings were held before a three member panel of the board between November, 2020, and February, 2021. The parties' joint submission to the arbitration panel stated: "1. Did the [defendant] have just cause to terminate [Santiago]? 2. If not, what shall the remedy be?"

Several witnesses, including Acosta, testified before the arbitration panel. In the period between his interview with Stone and his testimony before the arbitration panel, Acosta had been disciplined by Reyes. Acosta's subsequent testimony to the arbitration panel differed markedly from the conclusions he had provided to Stone during the department's internal affairs investigation. Before the arbitration panel, Acosta testified that

---

[2] " '[A] tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story' before termination. *Board of Education* v. *Loudermill*, [470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)]. The opportunity to present one's 'side of the story' is generally referred to as a *Loudermill* hearing." *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 243 n.3, 117 A.3d 470 (2015).

[3] In New Haven, the New Haven Police Commission has the authority to terminate officers; the police chief does not.

Santiago's decision to pull Rivera's hair might be justified if Santiago was not actually bearing or pulling Rivera's weight. He further testified that he did not have an opinion on whether Santiago was justified in kicking Rivera in the groin because he would need to know more about Santiago's state of mind and how he had perceived the totality of the circumstances.

Following Acosta's testimony, the defendant hired Eric Daigle, an attorney and former state trooper, to review the matter. After reviewing the video footage of the incident and other exhibits, Daigle prepared a report, which was submitted to the arbitration panel, opining in relevant part that the kick to Rivera's groin, hair pulling, punch, and reference to Cruz as a "side chick" all violated department policies. Daigle was permitted to testify before the arbitration panel over the plaintiff's objection. On June 24, 2021, the arbitration panel issued an award in favor of the defendant, finding that "[t]he [defendant] had just cause to terminate [Santiago]."

On July 22, 2021, the plaintiff filed its application in the Superior Court, seeking to vacate the arbitration award pursuant to General Statutes § 52-418.[4] In its application, the plaintiff claimed in relevant part[5] that

[4] General Statutes § 52-418 provides in relevant part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. . . ."

[5] The plaintiff also claimed that vacatur of the award was warranted under § 52-418 (a) (2), evident partiality or corruption on the part of any arbitrator, because a member of the arbitration panel had not disclosed that he was

vacatur of the award was warranted under § 52-418 (a) (4) because the arbitrators had exceeded their powers by relying on impermissible "after-acquired evidence," namely, Daigle's opinion that Santiago's actions had violated department policies. The plaintiff further claimed that the arbitration panel had "exceeded its authority under the issue submission" and acted with "manifest disregard of the law." The parties filed briefs, and the plaintiff, in its brief, did not iterate its claim that the arbitration panel had manifestly disregarded the law.

On December 18, 2023, the court, *Stewart, J.*, denied the plaintiff's application. In its memorandum of decision, the court explained that a party can prevail on a claim under § 52-418 (a) (4) that an arbitration panel exceeded its powers by establishing that either (1) the arbitration award fails to conform to the parties' submission, or (2) the arbitration panel manifestly disregarded the law. See, e.g., *Blondeau* v. *Baltierra*, 337 Conn. 127, 155, 252 A.3d 317 (2020). The court concluded that the plaintiff had abandoned any claim pertaining to the arbitration panel's alleged manifest disregard of the law because, although the plaintiff had invoked that ground for vacatur in its application, it had failed to brief it. The court further concluded that the arbitration award conformed to the parties' submission, because the submission asked, "[d]id the [defendant] have just cause to terminate [Santiago]," and the award stated that "[t]he [defendant] had just cause to terminate [Santiago]." Having concluded that the award conformed to the submission, the court declined to

related by marriage to a legislative cosponsor of Connecticut's "Police Accountability Bill," by which we assume the plaintiff meant No. 20-1 of the 2020 Public Acts, titled "An Act Concerning Police Accountability," which the legislature passed during a special session in July, 2020. The court concluded that the plaintiff had failed to adduce sufficient evidence to support a claim of evident partiality, and the plaintiff does not challenge that conclusion on appeal.

review whether it was proper for the arbitration panel to rely on Daigle's expert opinion, reasoning that to conduct such an inquiry would be to "undertak[e] a de novo review that is not permitted." This appeal followed.

We begin with the relevant legal principles. "Judicial review of arbitral decisions is narrowly confined. . . . [T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Arbitration is a favored method to prevent litigation, promote tranquility, and expedite the equitable settlement of disputes. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *DiTullio* v. *LM General Ins. Co.*, 210 Conn. App. 347, 358–59, 270 A.3d 99 (2022). "A submission is unrestricted when . . . the parties' arbitration agreement contains no language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review." (Internal quotation marks omitted.) *Board of Education* v. *Waterbury Teachers Assn., CEA-NEA*, 196 Conn. App. 463, 473 n.8, 230 A.3d 746 (2020). In the present case, the court concluded, and the parties do not dispute, that the submission to the arbitration panel was unrestricted. See also, e.g., *Connecticut State Police Union* v. *Dept. of Public Safety*, 86 Conn. App. 686, 690, 862 A.2d 344 (2004) (submission

that asked "[w]as the [plaintiff] terminated for just cause" and, "[i]f not, what shall be the remedy consistent with the [union] [c]ontract" was unrestricted (internal quotation marks omitted)), cert. denied, 274 Conn. 901, 876 A.2d 11 (2005).

"We have, however, recognized certain grounds for vacating an award even when the parties have committed a particular question to the authority of an arbitrator, including that: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Internal quotation marks omitted.) *Ahmed* v. *Oak Management Corp.*, 348 Conn. 152, 176, 302 A.3d 850 (2023), cert. denied,     U.S.    , 144 S. Ct. 2520, 219 L. Ed. 2d 1200 (2024). Relevant to this appeal, subdivision (4) of § 52-418 (a) provides that an arbitration award shall be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." "[A] claim that the arbitrators have 'exceeded their powers' may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law." *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 85, 881 A.2d 139 (2005).

"The standard for reviewing a claim that the award does not conform to the submission requires what [our Supreme Court has] termed in effect, de novo judicial review. . . . The de novo label in this context means something very different from typical de novo review because review under this standard and in this setting is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to

award the relief conferred." (Internal quotation marks omitted.) *ARVYS Protein, Inc.* v. *A/F Protein, Inc.*, 219 Conn. App. 20, 31, 293 A.3d 899, cert. denied, 347 Conn. 905, 297 A.3d 198 (2023).

"In determining whether an arbitrat[ion] [panel] has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator[s] correctly interpreted the contract. The court must instead focus on whether the [arbitrators] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator[s] [are] even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator[s'] decision cannot be overturned even if the court is convinced that the arbitrator[s] committed serious error. . . . Moreover, [e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator[s'] acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission. . . .

"Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator[s] and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 755–56, 980 A.2d 297 (2009).

With respect to a claim that an arbitration panel manifestly disregarded the law, our Supreme Court has

explained that "[a]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator[s] ha[ve] exceeded [their] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 613–14, 887 A.2d 872 (2006). "This standard of proof has rarely, if ever, been met in Connecticut." *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 287 Conn. 258, 280, 947 A.2d 928 (2008).

With these principles in mind, we turn to the plaintiff's claims.

I

The plaintiff first claims that the court improperly concluded that the arbitration award conformed to the parties' submission. We are not persuaded.

The submission to the arbitration panel asked: "1. Did the [defendant] have just cause to terminate [Santiago]? 2. If not, what shall the remedy be?" The arbitration award read: "The [defendant] had just cause to terminate [Santiago]." Notwithstanding this apparently clear correspondence between the award and the submission, the plaintiff nonetheless insists that, because the submission was written in the past tense—"[*d*]*id* the [defendant] have just cause to terminate [Santiago]"—the arbitration panel was "unambiguously" barred from considering any evidence that the defendant did not consider at the time it made its termination decision, including Daigle's opinion on whether the conduct for which Santiago was terminated violated department policies. As such, the plaintiff argues, when the arbitration panel relied in part on Daigle's opinion in concluding that the defendant had just cause to terminate Santiago's employment, it answered the question of "whether Santiago's conduct could theoretically justify termination based on a new expert's opinion," rather than the question that, in the plaintiff's view, the parties actually posed in their submission, "whether the [defendant] had just cause based on the evidence it actually considered . . . ."

Of course, the parties' submission to the arbitration panel did not ask whether the defendant had just cause to terminate Santiago's employment "based on the evidence it actually considered . . . ." It only asked whether the defendant had just cause to terminate Santiago's employment. The arbitration panel, therefore, was asked to determine only whether there existed facts and circumstances constituting "just cause" to terminate Santiago's employment under the parties' collective bargaining agreement. Nothing in the text of the submission constrained the arbitration panel, in arriving at its determination, to considering only certain

expert opinions about the relevant facts and circumstances at issue. Had the parties intended to impose such a constraint on the arbitration panel, they could have done so clearly and explicitly in their submission, provided that the collective bargaining agreement permitted it. See, e.g., *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 253, 117 A.3d 470 (2015) ("[h]ad [the parties] intended to limit the arbitrator's consideration to specific conduct, specific evidence, or a specific state of mind, they could have limited the scope of the submission if the agreement permitted such a limitation"); *Asselin & Vieceli Partnership, LLC* v. *Washburn*, 194 Conn. App. 519, 530, 221 A.3d 875 (2019) ("it is well established that [i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed" (internal quotation marks omitted)), cert. denied, 334 Conn. 913, 221 A.3d 449 (2020).

This court's holding in *Middlebury* v. *Teamsters Local Union No. 677*, 57 Conn. App. 223, 748 A.2d 340 (2000), is instructive. In *Middlebury*, this court affirmed a judgment confirming an arbitration award in favor of the town of Middlebury, which had discharged the chief mechanic in the town garage for insubordination and theft. Id., 224. The parties' submission to the arbitrators had asked whether the town had just cause to terminate the mechanic, and the arbitrators had determined that the town had just cause to do so. Id., 227. On appeal, the union argued that the award did not conform to the submission because the arbitrators had improperly considered additional evidence of pretermination misconduct that the town had not relied upon to support the mechanic's discharge. Id., 225–26. This court disagreed, concluding that, because the submission was unrestricted, "our review is limited to a comparison of

the award with the submission . . . ." (Citation omitted.) Id., 226–27. This court then compared the language of the award to that of the submission and concluded that, because the award conformed to the submission, the judgment upholding the arbitration award must be affirmed. Id., 227.

In this case the plaintiff, like the union in *Middlebury*, claims that the arbitration award fails to conform to the submission because the arbitration panel considered evidence that was not considered by the defendant when it discharged Santiago. As in *Middlebury*, the submission to the arbitration panel in this case was unrestricted. Thus, in this case, we, like the court in *Middlebury*, are limited to comparing the award to the submission and may not retroactively fashion limits on the arbitrators' authority that the parties did not include in their submission. Indeed, the plaintiff's claim in this case is even weaker than that of the union in *Middlebury*, because the plaintiff does not contend that the arbitration panel improperly considered evidence of additional misconduct, but only that it improperly considered a new expert opinion about the same underlying misconduct that the defendant considered when it terminated Santiago's employment. Because the arbitration panel concluded that the defendant had just cause to terminate Santiago's employment, which directly answered the first question that the parties had posed in their submission, it decided an issue that the parties had given it the authority to decide. See, e.g., *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 162 Conn. App. 525, 537 n.4, 131 A.3d 1238 (2016); *Connecticut State Police Union* v. *Dept. of Public Safety*, supra, 86 Conn. App. 690–91. The plaintiff's claim that the court improperly concluded that the award conformed to the submission therefore fails.[6]

---

[6] The plaintiff's reliance on our Supreme Court's decision in *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 6 A.3d 1142

## II

The plaintiff also claims that the court improperly refused to vacate the award because the arbitration panel's reliance on Daigle's expert opinion constituted a manifest disregard of the law. We decline to review this claim, both because the plaintiff abandoned it in the Superior Court and because the plaintiff has failed to adequately brief it before this court.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 351–52, 999 A.2d 713 (2010).

It is also well established that "[w]e are not required to review claims that are inadequately briefed. . . . We

---

(2010) (*AFSCME*), to support its argument that the award fails to conform to the submission is misplaced. In *AFSCME*, the court held that an arbitrator violated public policy when she relied upon a discharged correction officer's acceptance of accelerated rehabilitation as evidence of the officer's alleged misconduct. Id., 827–28. *AFSCME*, therefore, did not involve a claim that the arbitrator's award failed to conform to the submission. Rather, it involved a challenge to the arbitrator's decision on public policy grounds—a separate basis for vacatur that the plaintiff does not assert and that involves the application of a different legal standard. See, e.g., id., 835–38. *AFSCME* is thus inapposite to the plaintiff's claim.

consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).

As we have discussed previously in this opinion, the court concluded that the plaintiff had abandoned its manifest disregard claim by failing to brief it. The plaintiff does not challenge this conclusion. Indeed, in its principal appellant's brief, the plaintiff does not even acknowledge that the court deemed this claim abandoned. In its reply brief, the plaintiff argues for the first time that, abandonment notwithstanding, we should review its manifest disregard claim because it involves "a pure issue of law, on a matter of great public importance, affecting the right of a police officer to earn and make a living . . . ." Regardless of whether we construe this argument as a request for plain error review or for the exercise of our supervisory authority over the administration of justice to review unpreserved claims, it is unavailing, because neither request may be made for the first time in a reply brief. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); *Perry* v. *State*, 94 Conn. App. 733, 740 n.5, 894 A.2d 367, cert. denied, 278 Conn. 915, 899

A.2d 621 (2006). We therefore decline to review the plaintiff's claim that the arbitration panel manifestly disregarded the law because the plaintiff abandoned this claim in the Superior Court.

Even if we were to overlook the plaintiff's abandonment of its manifest disregard claim in the Superior Court, the plaintiff has also abandoned that claim before this court by virtue of inadequate briefing. Although the plaintiff's principal appellate brief summarily avers—in a section heading—that the arbitration panel "manifestly disregarded the law," nowhere in this brief does the plaintiff set forth the legal elements of a manifest disregard of the law claim, let alone attempt to explain how they apply in the present case. This court has deemed more robust briefing to be inadequate. See, e.g., *Fraser Lane Associates, LLC* v. *Chip Fund 7, LLC*, 221 Conn. App. 451, 474, 301 A.3d 1075 (2023) (defendant abandoned its claim of manifest disregard when it cited "no legal authority other than a case detailing the elements of manifest disregard" and "provided only a cursory explanation of why those elements are met"). It is only in its reply brief that the plaintiff argues that the elements of manifest disregard are satisfied. It is well settled, however, that "we consider an argument inadequately briefed when it is delineated only in the reply brief." (Internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 359 n.1, 241 A.3d 133 (2020); see also *State* v. *Elson*, 311 Conn. 726, 766, 91 A.3d 862 (2014) ("to receive review, a claim must be raised and briefed adequately in a party's principal brief, and the failure to do so constitutes the abandonment of the claim"). We therefore also decline to review the plaintiff's claim that the arbitration panel manifestly disregarded the law because the plaintiff has abandoned that claim before this court.

The judgment is affirmed.

In this opinion the other judges concurred.